# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| KYLA WILLIAMS, | : | |
| --- | --- | --- |
| Plaintiff, | : | Civil Action No.: 16-0733 (RC) |
| v. | : | Re Document Nos.: 10, 12 |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL; GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF AFFIRMANCE

## I. INTRODUCTION

Plaintiff, Ms. Kyla Williams, unsuccessfully applied for supplemental security income (SSI) benefits. Her appeal was rejected by an Administrative Law Judge (ALJ), and Ms. Williams sought this Court's review of the ALJ's decision. After this case was referred to Magistrate Judge Deborah A. Robinson for full case management, Magistrate Judge Robinson recommended that the Court affirm the denial of benefits. Because the Court agrees with Magistrate Judge Robinson's conclusions, the Court will adopt the report, grant the Defendant's motion for affirmance, and deny Ms. Williams's motion for reversal.

---

[1] Acting Secretary Berryhill is substituted as a defendant in accordance with Federal Rule of Civil Procedure 25(d).

## II. BACKGROUND

Ms. Williams applied for SSI benefits in 2012. AR 193–99.[2] She reported that she was disabled due to pain in her knee, manic depression, and bipolar disorder. AR 237. The Social Security Administration denied Ms. Williams's application. AR 108. Ms. Williams appealed the denial to an ALJ, resulting in a hearing, *see* Transcript, AR 38–66, and eventually a written opinion affirming the denial, *see* ALJ Decision, AR 18–30. The ALJ concluded that Ms. Williams did have multiple severe impairments—namely, degenerative joint disease, obesity, and bipolar disorder. ALJ Decision, AR 22. However, the ALJ concluded that Ms. Williams did not qualify for SSI benefits because she still had the ability, or residual functional capacity, to perform limited types of work. ALJ Decision AR 24. Specifically, the ALJ found that Ms. Williams could:

> perform sedentary work . . . except [Ms. Williams] cannot operate foot controls with her right foot. She cannot climb ladder[s], ropes, or scaffolds or crawl. She can occasionally balance, stoop, kneel, and crouch. [Ms. Williams] should avoid exposure to extreme cold and exposure to workplace hazards such as unprotected machinery and unprotected heights. [Ms. Williams] is limited to performing simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. She can have no interaction with the public and only occasional interaction with co-workers and supervisors.

ALJ Decision, AR 24. Because the ALJ concluded that Ms. Williams's residual functional capacity permitted her to perform work existing in significant quantities in the national economy, the ALJ concluded that she was not disabled. ALJ Decision, AR 24–29.

The dispute between the parties focuses on the ALJ's conclusions concerning Ms. Williams's psychiatric conditions, which Ms. Williams argued the ALJ did not adequately

---

[2] Citations to the Administrative Record (AR) docketed at ECF No. 6 use the page numbers that run to 573 in the bottom-right corner.

consider in determining her residual functional capacity. Ms. Williams presented assessments from three psychiatrists—Dr. Prayaga,[3] Dr. Rehman, and Dr. Panbehi.[4] ALJ Decision, AR 27. Drs. Prayaga and Rehman had treated Ms. Williams, and Dr. Panbehi was familiar with her treatment records. ALJ Decision, AR 27. Each psychiatrist stated, with some variation, that Ms. Williams's psychiatric conditions prevented her from working.[5] ALJ Decision, AR 27. The ALJ

---

[3] Various documents in the record differ in their spelling of the name of Ms. Williams's first psychiatrist. *See, e.g.*, Def.'s Mot. Affirmance & Opp'n Pl.'s Mot. at 6, ECF No. 12 (Pryagga); AR 546 (Pryagga). The Court uses the ALJ's spelling of "Prayaga."

[4] The spelling of the name of Ms. Williams's third psychiatrist is also rendered in various ways. *See* Pl.'s Obj. R&R at 2, ECF No. 17 (Penhebi and Penjabi). The Court uses the ALJ's spelling of "Panbehi."

[5] Dr. Prayaga submitted a standard form entitled "Mental Residual Functional Capacity Assessment." The form comprised several pages of checkboxes for different aspects of cognitive function. Dr. Prayaga checked "markedly limited" for every aspect. Prayaga Assessment, AR 537–540. In the section for comments, Dr. Prayaga wrote that Ms. Williams could not work. Prayaga Assessment, AR 540. (Although the handwritten portion is difficult to decipher, the ALJ also interpreted it as stating that Ms. Williams could not work. *See* ALJ Decision, AR 27.) The Court notes that the signature of the doctor completing the form is illegible, but neither side has objected to the ALJ's statement that it was completed by Dr. Prayaga, so the Court does not address this further.
     Dr. Rehman also submitted the same Mental Residual Functional Capacity Assessment. For fifteen of the categories, "markedly limited" was checked, and "moderately limited" was checked for the remaining five categories. Rehman Assessment, AR 542–44. In the comments section, Dr. Rehman wrote that Ms. Williams was "not recommended for work @ this time." Rehman Assessment, AR 544. The Court notes that the signature on this assessment is likewise indecipherable, but does not disturb the ALJ's conclusion that the assessment was submitted by Dr. Rehman.
     Dr. Panbehi wrote a letter concluding that "Ms. Williams'[s] psychiatric condition would cause her to be off task in a work setting at least 20% of the time . . . . she would need to be reminded of work-related tasks 5 or more times a day" and "her mental health condition would cause her to miss three or more days of work a month." Letter from Dr. Bahram Panbehi to Mr. Mayor (Oct. 9, 2014), AR 545.
     Dr. Panbehi's letter responded to questions that the ALJ asked the vocational expert at the hearing. *See* ALJ Transcript, AR 63 (in response to the ALJ's questions of "[W]hat if— again, I'm trying to envision what the treatment records might show, so I don't have the evidence to support this now . . . . [L]et's say that the person would need to be reminded of tasks . . . . five times per day. Would that be a factor? . . . And if someone were off-task 20 percent of the workday, would that affect any of these jobs? . . . And then if someone had unexcused or unscheduled absences three or more times per month, would that have an impact?," the vocational expert stated that any of the three impairments would prevent a person from

also considered some of Ms. Williams's treatment notes. ALJ Decision, AR 27; *see also* Psychiatric Encounter Notes, AR 547–72. The treatment notes spanned from August 7, 2013 to August 27, 2014.[6] Psychiatric Encounter Notes, AR 547–72. The substance of the treatment notes varies very little from encounter to encounter, and the written comments are often repeated verbatim from visit to visit. *See generally* Psychiatric Encounter Notes, AR 547–72. In general, the treatment notes indicate that Ms. Williams's condition was stable and that no new major concerns were present. *See generally* Psychiatric Encounter Notes, AR 547–72.[7]

---

performing the jobs the expert identified). Dr. Panbehi's letter was submitted prior to the ALJ's decision of November 2014 and was explicitly considered by the ALJ. *See* ALJ Decision, AR 27 ("A psychiatrist, Bahram Panbehi, M.D., stated on October 9, 2014, . . . . The undersigned gives this opinion little weight because the psychiatric progress [reports] do not support this assessment . . . .").

[6] It is unclear which psychiatrist prepared the treatment notes. According to Plaintiff, Dr. Prayaga was Ms. Williams's first psychiatrist, and he stopped seeing her in "late 2013." Pl.'s Mot. J. Reversal at 2, ECF No. 10. After Dr. Prayaga, Ms. Williams saw Dr. Rehman until "right before [the] October 1, 2014 hearing." Pl.'s Mot. J. Reversal at 3. This timeline suggests that most of the treatment notes were created by Dr. Rehman. The ALJ and Defendant do not advance an opinion about who created the treatment notes.

[7] The treatment notes take two different formats. From August 7, 2013 to December 6, 2013, the form comprises several pages of checkboxes. Psychiatric Encounter Notes, AR 547–61. Then, from January of 2014 onward, the form consists of several general categories with typewritten comments in each category. Psychiatric Encounter Notes, AR 562–72. The typewritten comments appear verbatim, suggesting that the form was computer-generated in the style of teacher comments on a report card.

The treatment notes from August 2013 to October 2013—using the checkbox form—indicate that Ms. Williams's condition remained the same; that her mood and sleep were normal; and that she experienced no substance abuse or psychotic symptoms. AR 547–555. All also note, without elaboration, that her cognitive functioning was "[i]mpaired." AR 548, 551, 554. One indicates that she experienced medication side effects and concentration problems. AR 550. The final two forms, for October and December of 2013, are almost entirely blank except for the medication plan, signature, and date. AR 556–61.

The treatment notes from January 2014 to August 2014—using typewritten notes in each category—are similarly repetitive. Each states verbatim that "Patient reports feeling better/well, denies any new Complaint, medication/s side effects, thoughts of hurting self/others or any hallucinations. Patient sleeps 6-8 hrs/night and likes to continue the present treatment." AR 562–72. None mentions cognitive function, although all include the notations "Concentration=good" and "Thought process=logical." AR 562–72.

4

In considering the evidence from Ms. Williams's psychiatrists, the ALJ concluded that Dr. Prayaga's letter was entitled to "little weight" because the treatment records "evidence[d] a much higher level of functioning" than the letter. ALJ Decision, AR 27. Similarly, the ALJ concluded that Dr. Rehman's letter should receive "little weight" because "it comes from a checkbox form that is not supported by [Ms. Williams's] treatment records showing much less significant symptomatology." ALJ Decision, AR 27. Finally, the ALJ gave Dr. Panhebi's letter "little weight" because it was not supported by Ms. Williams's psychiatric progress reports or treatment notes. ALJ Decision, AR 27. In discounting these three assessments, the ALJ also considered Ms. Williams's ability to perform the tasks of daily living—such as using public transit, shopping, cooking, and caring for her son—and that her symptoms may not be as severe as she stated because of her "lack of compliance" with medical advice. ALJ Decision, AR 25. In addition, the ALJ weighed the opinions of two state agency consultants, who advised—concerning Ms. Williams's psychiatric conditions—that she was "moderately" limited in her ability to concentrate and work with others. ALJ Decision, AR 26–27; *see also* AR 73–77, 103–04.[8] The ALJ gave the state consultants' opinions "some weight" but noted that they frequently used the term "moderate," which "is vague and can encompass a range of functioning." ALJ Decision, AR 27.

Ultimately, after weighing all of the evidence, including the three assessments, the ALJ concluded that, although "[Ms. Williams's] medically determinable impairments could be

---

[8] One of the state consultants, Dr. Brandon, concluded that Ms. Williams's psychiatric conditions would not restrict her activities of daily living, would "[m]oderate[ly]" restrict her social functioning, and would "[m]oderate[ly]" restrict her concentration and persistence. AR 74–75. In evaluating Ms. Williams's ability to concentrate and interact socially, Dr. Brandon found that in some regards Ms. Williams's was not significantly limited, but in some regards she was "[m]oderately limited." AR 76–77.

The other state consultant, Dr. Cott, likewise concluded that Ms. Williams had some areas of "[m]oderately limited" capacity for concentration and social interactions and other areas of insignificant limitations. AR 103–04.

expected to cause the alleged symptoms," "[Ms. Williams's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." ALJ Decision, AR 24–25. In weighing all of the evidence about Ms. Williams's psychiatric state, the ALJ concluded that "the more probative evidence of record" supported that Ms. Williams had "an ability to perform work within [her identified] residual functional capacity." ALJ Decision, AR 28.

Ms. Williams sought this Court's review of the ALJ's decision in accordance with 42 U.S.C. § 1383(c). Compl. ¶ 2, ECF No. 1. Ms. Williams moved for reversal of the ALJ's decision, Pl.'s Mot. J. Reversal, ECF No. 10, and Defendant moved for affirmance, Def.'s Mot. Affirmance & Opp'n Pl.'s Mot., ECF No. 12.[9] The case was referred to Magistrate Judge Robinson for full case management. Order (June 15, 2016), ECF No. 9; Docket Entry (Nov. 29, 2016). Magistrate Judge Robinson's Report and Recommendation concluded that the ALJ's opinion should be affirmed. Report & Recommendation (R&R), ECF No. 16. Ms. Williams objected to the R&R, Pl.'s Obj. R&R, ECF No. 17, and Defendant responded, Def.'s Resp. Pl.'s Obj., ECF No. 18.

### III. LEGAL STANDARD

Two standards of review are at issue here—first, the standard applicable to the report and recommendation of a magistrate judge, and second, the standard applicable to the decision of the ALJ.

As to the first, Local Civil Rule 72.3 states that "[a] district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . . ." LCvR 72.3(c); *see also* 28 U.S.C. § 636(b)(1) (providing that when a

---

[9] The document docketed at ECF No. 12 as Defendant's motion for judgment of affirmance is also docketed at ECF No. 13 as Defendant's opposition to Ms. Williams's motion for reversal. The Court cites exclusively to ECF No. 12.

magistrate judge is designated to submit proposed findings of fact and recommendations, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *Porter v. Colvin*, 951 F. Supp. 2d 125, 128–29 (D.D.C. 2013). Even where there is no objection by the parties, "[a] district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge." LCvR 72.3(c); *see also* 28 U.S.C. § 636(b)(1). Here, because Ms. Williams objects to the conclusions of the R&R, the review of the magistrate judge's R&R will be de novo.

As to the second, "[p]ursuant to Section 205(g) of the Social Security Act, district courts review decisions of the SSA Commissioner, made through the ALJ, to determine whether [the] findings are supported by substantial evidence in the record." *Porter*, 951 F. Supp. 2d at 129 (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) ("The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." (citations omitted)). For these purposes, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

The substantial evidence standard is "highly deferential" to the ALJ's decision. *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). "[B]ecause the broad purposes of the Social Security Act require a liberal construction in favor of disability," the evidence

should be viewed to favor the plaintiff. *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994). However, although the district court must "carefully scrutinize the entire record," *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005), to determine whether the ALJ has "analyzed all evidence and has sufficiently explained the weight . . . given to obviously probative exhibits," *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (quoting *Butler*, 353 F.3d at 999), the district court cannot "re-weigh the evidence and reach its own determination," *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984). *See also Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (holding that the ALJ "cannot merely disregard evidence which does not support his conclusion"). It is the plaintiff's burden to show that the ALJ's decision lacked substantial evidence. *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32–33 (D.D.C. 2014) (citing *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## IV. DISCUSSION

As Magistrate Judge Robinson noted, "Plaintiff's sole argument for reversal is that the ALJ's decision was contrary to law, in that the ALJ afforded improper weight to the record evidence of Plaintiff's three treating psychiatrists." R&R at 4. The ALJ discounted the assessments of the three doctors because the ALJ found that the treatment notes and other record evidence did not support the conclusions of the assessments. AJD Decision, AR 24–28. Ms. Williams concedes that the treatment notes "are exceptionally sparse and . . . do not provide any direct support for the opinions describing serious psychiatrically-caused limitations that are contained in the evaluations" and that "because [the treatment] notes each month say that the patient reports feeling better, the notes do appear to be inconsistent with the opinions" of the

doctor's assessments.[10] Pl.'s Mot. J. Reversal at 6. Nevertheless, Ms. Williams argues that the ALJ's "use of the treatment notes to discredit the opinions of these three treating psychiatrists was inappropriate." Pl.'s Mot. J. Reversal at 6.

First, Ms. Williams argues that this Court should adopt the Seventh Circuit's position in *Herrmann v. Colvin*. Pl.'s Mot. J. Reversal at 6–7. The court in *Herrmann* held:

> [The ALJ] state[d] that the opinion of one of the applicant's treating physicians[] would be "given no significant weight, because the functional limitations are not supported by [the doctor's] sparse treatment statement notes or by examination findings made by other physicians." The administrative law judge seems to have thought that a physician's evidence can be disregarded unless he has detailed notes to back it up and other physicians provide identical evidence even if they don't contradict him—in other words no credibility without corroboration. These are insufficient grounds for disbelieving the evidence of a qualified professional.

*Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). However, even if the Court considered this out-of-circuit precedent, *Herrmann* is inapposite here. As Magistrate Judge Robinson notes, the ALJ did not discount the assessments because the treatment notes were too sparse—rather, the ALJ discounted the assessments because the sparse statements in the treatment notes contradicted the assessments' conclusions about Ms. Williams's capacity. *See* R&R at 7 ("The ALJ in the instant case, however, did not require corroboration from Plaintiff's treatment notes, but rather identified inconsistencies between the treatment notes and the opinions of Plaintiff's psychiatrists.").

---

[10] In addition, Ms. Williams argues that because the treatment notes "never varied, not by as much as one word, from month to month," it would be "more reasonable" to conclude that they "were intended to primarily keep track of the fact that [the doctor] had met with [Ms. Williams] that month" rather than to "accurately reflect[] how well [Ms. Williams] was doing." Pl.'s Mot. J. Reversal at 9. Even if the Court accepts, *arguendo*, that Ms. Williams's interpretation is "more reasonable," the highly deferential standard of review for substantial evidence does not permit the Court to overturn the ALJ's contrary decision to interpret the treatment notes as evidence of Ms. Williams's psychiatric condition during treatment.

9

Second, Ms. Williams argues that the ALJ failed to give the three assessments the "controlling weight" that the applicable regulations designate for the opinion of a treating physician unless the opinion is "inconsistent with other substantial evidence." Pl.'s Mot. J. Reversal at 10 (citing 20 C.F.R. § 404.1527(d)). However, in this case the ALJ identified substantial evidence inconsistent with the assessments: (1) the treatment notes, (2) the state consultants, (3) Ms. Williams's ability to conduct the tasks of daily life, and (4) Ms. Williams's documented lack of compliance with medical advice. ALJ Decision, AR 25–28. Based upon this inconsistent evidence, the ALJ was permitted to not give the treating physicians' opinions controlling weight. *See Grant v. Astrue*, 857 F. Supp. 2d 146, 153–54 (D.D.C. 2012) (upholding the ALJ's decision to not give the opinion of the treating physician controlling weight because the ALJ had discussed contrary substantial evidence in the form of contradictory treatment notes, contradictory opinions from consultants, and the lack of laboratory tests supporting the treating physician's opinion).

Furthermore, the ALJ's explanation for discounting the assessments was sufficient. In this circuit, "[w]e [] require an ALJ 'who rejects the opinion of a treating physician [to] explain his reasons for doing so.'" *Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011) (quoting *Butler*, 353 F.3d at 999). This requires that the ALJ at least "note[] the contradictory evidence in the record." *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (quoting *Butler*, 353 F.3d at 1002)); *see also Grant*, 857 F. Supp. 2d at 155 ("The regulations require only that 'good reasons' be provided for the weight given a treating physician's opinion." (citing *Turner*, 710 F. Supp. 2d at 106)). The Court agrees with Magistrate Judge Robinson's conclusion that "the ALJ here *did* acknowledge and cite the contrary evidence in the record" in the form of the treatment notes, as

well as the opinions of the state consultants and Ms. Williams's daily activities. R&R at 5; *see also* R&R at 5–7.

The Court therefore agrees with the conclusion of Magistrate Judge Robinson that "the ALJ's decision is supported by substantial evidence in the record and was made in accordance with the applicable law." R&R at 5. The ALJ's decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Court notes that its review of the ALJ's decision is necessarily highly deferential. *See Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). The Court has examined the evidence in the record, and concluded that the ALJ sufficiently explained the weight accorded to each exhibit. Moreover, the Court is mindful that it cannot "re-weigh the evidence and reach its own determination." *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984).

In objecting to the R&R, Ms. Williams raises largely the same arguments from her initial motion, including the argument concerning *Herrmann*—which this Court has already discussed. Pl.'s Obj. R&R at 1–2. Ms. Williams also argues that the ALJ erred in weighing the evidence by "discounting the opinions of all three treating psychiatrists because they were inconsistent with the treatment notes of one of them." Pl.'s Obj. R&R at 3. However, as discussed above, the ALJ relied on evidence in the record other than the treatment notes in deciding not to give the opinion of Ms. Williams's treating psychiatrists controlling weight. Ms. Williams also analogizes this case to *Porter v. Colvin*, where a court determined that the ALJ gave too little weight to the opinions of treating physicians. Pl.'s Obj. R&R at 3–4. However, in *Porter* the ALJ had discounted the opinions because they had "opined on Plaintiff's disability." *Porter v. Colvin*, 951 F. Supp. 2d 125, 132 (D.D.C. 2013). Furthermore, the ALJ in *Porter* rejected the reports "in their

11

totality" and "also disregarded the substantive information contained in these reports." *Id.* at 133 (citation omitted). Here, unlike in *Porter*, the ALJ did not discount the assessments because they reached an ultimate conclusion on Ms. Williams's disability, or discount them in their totality. Instead, the ALJ identified a variety of sources of contradictory evidence in the record to explain why the ALJ did not give the assessments controlling weight.[11] Because Ms. Williams has not met her burden of demonstrating lack of substantial evidence supporting the ALJ's conclusion, this Court will adopt Magistrate Judge Robinson's R&R and affirm the ALJ's decision.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal (ECF No. 10) is **DENIED** and Defendant's Motion for Judgment of Affirmance (ECF No. 12) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 31, 2017                                                                                     RUDOLPH CONTRERAS
                                                                                                                    United States District Judge

---

[11] If the Court considered Ms. Williams's reliance on the out-of-circuit case *Knight v. Colvin*, it would find it inapposite. *See* Pl.'s Obj. R&R at 4. The court in *Knight* found that the ALJ had erred by discounting the opinions of treating physicians without "explain[ing] how the opinions are inconsistent with the treatment records" or presenting other substantial evidence contradicting the treatment records. *Knight v. Colvin*, No. 14-465, 2016 WL 1237886, at *9 (N.D. Ind. Mar. 30, 2016). Here, the ALJ did explain the inconsistencies between the assessments and the treatment records, and did identify other, substantial contrary evidence.